

FILED

2024 Feb-16  AM 10:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **GARY BRADLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **1:22-cv-01312-LSC** |
| **MARTIN O'MALLEY,** | ) | |
| **Acting Commissioner,** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF OPINION

### I.     Introduction

On October 12, 2022, Gary Brian Bradley ("Bradley" or "Plaintiff") filed with the Clerk of this Court a complaint against the Acting Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). (Doc. 1.) Bradley appeals the Commissioner's decision denying Bradley's claim for a period of disability and disability insurance benefits ("DIB"). (Doc. 1; Doc. 8 at 1–2.) Bradley timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Background

Bradley received a GED, the equivalent of a high school education, and previously worked as a heavy equipment operator. (Tr. at 24, 50, 205.) He was forty-eight years old at the time of his application for a period of disability and DIB on February 12, 2021. (Tr. at 68, 82, 177–83.) Bradley's application for benefits alleged a disability onset date of November 20, 2020. (Tr. at 68, 82, 177–83.)  He claims disability due to diabetes, shoulder problems, nerve damage, pinched nerves, degenerative disc disease, depression, anxiety, and bipolar disorder. (Tr. at 87, 204.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for a period of disability and DIB. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity

of the claimant's medically determinable physical and mental impairments. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id*. The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial evidence in the record" adequately supported the finding that the claimant was not disabled).

Similarly, the third step requires the evaluator to consider whether the claimant's impairment or combination of impairments meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id*.

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the claimant has the RFC to perform the requirements of his past relevant work. *See id*. §§ 404.1520(a)(4)(iv),

416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *Id*.

The fifth and final step requires the evaluator to consider the claimant's RFC, age, education, and work experience in order to determine whether the claimant can make an adjustment to other work. *Id*. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can perform other work, the evaluator will find him not disabled. *Id*.; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") first established that Plaintiff has not engaged in SGA since his alleged disability onset date. (Tr. at 17.) Next, the ALJ found that Plaintiff's cervical degenerative disc disease, status post anterior cervical discectomy and fusion, diabetes mellitus, neuropathy, delusional disorder, and depression with anxious distress qualify as "severe impairments." (*Id*.) However, the ALJ also found that these impairments or combination of impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 18–20.) Following this determination, the ALJ established that Plaintiff has the following RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) except he can frequently push and/or pull with the bilateral upper extremities and frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. He can frequently balance, stoop, kneel, crouch, and occasionally crawl. He can frequently reach overhead bilaterally and frequently finger bilaterally. He should avoid concentrated exposure to extreme cold, heat, wetness, vibration, and any exposure to hazards. He can understand, remember, and carry out simple, one to two step instructions and maintain attention for two-hour periods. He can tolerate occasional interaction with the general public, co-workers, and supervisors. Changes in the workplace should be introduced gradually and occur no more than occasionally.

(Tr. at 20–24.)

Relying on the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff is unable to perform past relevant work as "actually or generally performed." (Tr. at 24.) The ALJ also determined that Plaintiff is a "younger individual age 18-49" at forty-eight years old. (Tr. at 24.)  The ALJ determined that the "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (Tr. at 24.) Considering Plaintiff's age, education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines and the testimony of a VE, the ALJ determined that Plaintiff is capable of performing jobs that exist in significant numbers within the national economy, such as a production assembler, hand packager, and

housekeeping cleaner. (Tr. at 24–25.) From these findings, the ALJ concluded the five-step evaluation process by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, at any time from November 20, 2020, the alleged onset date, through the date of this decision." (Tr. at 25.)

## III.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided that those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits

administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *See Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

## IV.   Discussion

Plaintiff argues that the ALJ's decision should be reversed and remanded for the following reasons: 1) the ALJ failed to properly evaluate the medical opinion evidence in determining Plaintiff's mental RFC; (2) the ALJ failed to

reconcile conflicts in the testimony of the VE and information in the Dictionary of Occupational Titles ("DOT"); (3) the ALJ failed to properly evaluate Plaintiff's subjective statements; and (4) the ALJ relied on a flawed hypothetical question to the VE. (Doc. 8 at 2.)

### a. Weight Given by the ALJ to the Opinion of Dr. Haney

To be found disabled, Plaintiff had to demonstrate that he was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment expected to result in death or to last twelve or more continuous months. *See* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505. At step two, the ALJ had to determine whether Plaintiff had a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling(s) ("SSR"s) 85-28. The burden of showing that an impairment or combination of impairments is "severe" rested at all times with Bradley, as

the Plaintiff. *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). Because Plaintiff bore the burden of proving he had a severe impairment, he thus had the burden of establishing the prerequisite for finding a severe impairment, i.e., the existence of a medically determinable impairment. *See Doughty*, 245 F.3d at 1280.

The record must include evidence from acceptable medical sources to establish the existence of a medically determinable impairment. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1513(a), 416.913(a) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . .; there must be medical . . . findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities . . . ."); *see also* 20 C.F.R. § 404.1502 (defining symptoms, signs, and laboratory findings).

Plaintiff asserts that the ALJ failed to properly weigh the opinion of Dr. John Haney, Ph.D., as Plaintiff's examining psychologist, and further erred in failing to provide good cause for doing so. (Doc. 8 at 3–8.)

New regulations came into effect in 2017,[1] which govern this case. In addition to changes in how the Appeals Council reviews a case, these new regulations also provide revised instructions to the ALJ for evaluating medical opinions. For claims filed on or after March 27, 2017, 20 C.F.R. §§ 404.1520c and 416.920c declare that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." Instead, the ALJ will consider supportability, consistency, relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship specialization, and other factors in evaluating medical opinions and prior administrative medical findings, with the most important factors being supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c. While the ALJ must explain the role of the supportability and consistency factors in evaluating the opinion of a medical source or administrative medical finding, he is not required to do the same for the other factors. *Id.* In responding to comments to these changes when proposed, the Social Security Administration explained,

> The supportability and consistency factors provide a more balanced and objective framework for considering medical

---

[1] The new regulations rescinded the treating physician rule. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298 (Mar. 27, 2017).

opinions than focusing upon the factors of consistency and the medical source's relationship with the individual. A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, will not be persuasive regardless of who made the medical opinion.

*Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01 (Jan. 18, 2017).

In contrast, 20 C.F.R. §§ 404.1527 and 416.927, the regulations that govern for claims filed before March 27, 2017, prioritize the treatment relationship, giving more weight to a treating source's medical opinion. Indeed, if the ALJ "find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of [Plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight." 20 C.F.R. §§ 404.1527, 416.927.

Plaintiff cites *Marshall v. Comm'r of Soc. Sec.*, No. 7:21-cv-00231-JHE, 2022 WL 4538453, at *6–8 (N.D. Ala. Sept. 28, 2022) and *Johnson v. Comm'r of Soc. Sec.*, No. 4:20-cv-01415-NAD, 2022 WL 980841, at *9–10 (N.D. Ala. Mar. 30, 2022) to show that the ALJ's failure to articulate how he or she considered opinions and explain how the supportability and consistency factors support the decision of the entire record, is reversible error. (Doc. 8 at 4.) In *Marshall*, the Court found the ALJ's evaluation improper because although the ALJ

discredited the physician's opinion, the ALJ's opinion did not actually conflict with the consulting physician's opinion; the ALJ relied on primary care examination findings that were unrelated to the claimant's mental state; and the ALJ relied on claimant's relative lack of mental health treatment without considering possible reasons why the claimant didn't seek treatment. *Marshall*, 2022 WL 4538453 at *6–8. In *Johnson*, the ALJ found the treating physician's opinions were not supported by her own treatment notes, and limitations the treating physician opined to were not supported by claimant's neurology treatment notes; however, the Court found that the ALJ's findings were not supported by substantial evidence. *Johnson*, 2022 WL 980841 at *9–10.

Plaintiff cites additional authority, including *Simon v. Comm'r of Soc. Sec.*, 1 F.4th 908, 911 (11th Cir. 2021), *McCruter v. Bowen*, 791 F.2d 1544, 1545–48 (11th Cir. 1986), and *Buck v. Astrue*, No. 8:10-cv-980-T-26TMB, 2011 WL 3585863, at *1 (M.D. Fla. July 29, 2011), in support of his argument, but in each of these cases, the Court was applying the prior regulations because Mr. Simon's claim was filed in March 2015, Ms. McCruter's claim was filed prior to 1986, and Mr. Buck's claim was filed in 2006, all well before the new regulations went into effect. (Doc. 8 at 7.)

Dr. Haney's assessment of Plaintiff's mental capacities on June 15, 2021, stated that he likely would experience difficulty and impairment attending,

concentrating, and persisting in employment. (Tr. at 445.) Dr. Haney opined that Plaintiff's ability to relate to other people seemed seriously impaired by depression, anxiety, and psychosis. (*Id.*) Dr. Haney also stated that Plaintiff likely could be expected to understand, remember, and "carry out simple one or two-step job instructions." (*Id.*) Dr. Haney stated that Plaintiff "likely would have difficulty tolerating work stress and maintaining customary attendance, persistence, and pace due to psychiatric impairment." (*Id.*) The ALJ noted that the medical opinion of Dr. Haney was fully considered but concluded that "his opinion was not specific in all areas concerning the ability to work." (Tr. at 22–23.)

The Commissioner argues that—aside from Dr. Haney's opinion that Plaintiff could be expected to understand, remember, and carry out simple one or two-step job instructions—Dr. Haney's other statements are not medical opinions under the new regulations. (Doc. 9 at 8.) The regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work activities and the ability to adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). The other statements from Dr. Haney, described above, do not include any assessment of what

Plaintiff is still able to do. (Tr. at 445.) As the ALJ stated, these statements were not specific in all areas concerning the ability to work. (Tr. at 23.) These statements include qualifying language, "likely would have difficulty." (Tr. at 445.) Such opinions merely describe Plaintiff's ideal work conditions; Dr. Haney did not say what work condition was required for Plaintiff to function at all. (Tr. at 445.) Therefore, the ALJ is not required to give weight to these statements. *See Whitten v. Soc. Sec. Admin., Comm'r*, 778 Fed. App'x[2] 791, 796 (11th Cir. 2019) (finding no error where the ALJ left out the State agency physician's opinion regarding how the plaintiff "would function 'best' in a well-spaced work setting" but did not say a well-spaced work setting was required to function at all).

The ALJ considered other medical evidence. (Tr. at 23–24.) The State Agency medical consultants concluded that "while [Plaintiff] would have difficulty sustaining concentration to remember and carry out detailed tasks, [Plaintiff] is capable of understanding, remembering, and carrying out simple, routine tasks over a normal workday/workweek;" "capable of performing simple daily activities without significant problems from a mental condition;" "be able to maintain attention and concentration for at least 2 hours at a time

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." U.S. Ct. of App. 11th Cir. Rule 36-2.

as required in order to perform simple tasks, sufficiently to complete an 8-hour day and a 40 hour week;" "be able to maintain a schedule as long as it is somewhat flexible and not demanding;" "capable of maintaining appropriate superficial social interactions in work settings where completion of tasks require only casual and infrequent contact with coworkers and the general public;" "ability to adapt adequately to changes and demands of detailed tasks is limited [but] not at a level that would limit adapting adequately to changes [and] demands in simple tasks." (Tr. at 66, 79.) When evaluating Dr. Haney's medical opinion, the State Agency medical consultants found that Dr. Haney's opinion is based on the claimant's reported symptoms rather than overall objective signs. (Tr. at 62, 75.) In reconciling the opinion of Dr. Haney, the State Agency medical consultants noted that Dr. Haney's "medical opinion contrasts with the other evidence in the record, which renders it less persuasive," and that his "medical opinion is without substantial support from the medical source who made it, which renders it less persuasive." (Tr. at 62, 76.) The ALJ noted that the State Agency medical consultants' mental residual functional capacity included restrictions that were not in the vocational parlance, finding their opinions partially persuasive. (Tr. at 23.) The ALJ noted that the treatment records and examinations "suggest greater sustained capacity than described by the claimant," and that the "claimant's self-reported physical limitations

[and mental impairments] are not consistent with the medical evidence, and he simply alleges a greater degree of debilitation than what objective evidence can support." (Tr. at 23–24.)

While the ALJ did not specifically explain how she considered the "supportability" and "consistency" factors, as required by 20 C.F.R. § 404.1520c(b)(2), which would normally constitute reason for remand, the ALJ did state that Plaintiff's RFC assessment

> is supported by the record, when considered as a whole, especially in light of the course of treatment prescribed to the [Plaintiff] for his impairments, the opinion evidence as discussed above, and the medical treatment records discussed above, all of which suggest greater sustained capacity than described by the [Plaintiff]. Notwithstanding his allegations of pain, discomfort and physical limitations, treatment records and examinations do not provide evidence that would reasonably support a finding that the [Plaintiff] is as physically limited as alleged.

(Tr. at 23.) This statement indicates that the ALJ considered the supportability and consistency factors in relation to Dr. Haney's opinion and accounted for the limitations set forth in it. Supportability is based on "the objective medical evidence and supporting explanations presented by a medical source." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The ALJ's RFC finding limiting Plaintiff to understanding, remembering, and carrying out simple, one to two step instructions (tr. at 20) is generally consistent with Dr. Haney's limitation that Plaintiff likely could be expected to understand, remember, and carry out

simple one or two-step job instructions (tr. at 445). The State Agency psychologists also opined that Plaintiff was capable of understanding, remembering, and carrying out simple, routine tasks over a normal workday/workweek. (Tr. at 66, 79.) Because the ALJ accepted Dr. Haney's opinion as establishing limitations on Plaintiff's ability to understand, remember, and carry out simple, one to two step instructions (tr. at 20), the absence of a detailed discussion of Dr. Haney's opinion by the ALJ was no more than harmless error.

Based on this evidence, the ALJ could properly find that Dr. Haney's assessment of Plaintiff's limitations is inconsistent with the medical record and unsupported by medical evidence. As a result, the ALJ did not err in the weight given to Dr. Haney's opinion.

### b.  Vocational Expert and Dictionary of Occupational Titles

Plaintiff argues that the ALJ failed to reconcile apparent conflict between the Dictionary of Occupational Titles ("DOT") and the testimony of the VE regarding the jobs found for Plaintiff at step five of the sequential evaluation, where the ALJ determines whether Plaintiff can perform other work that exists in significant numbers in the national economy. (Doc. 8 at 8.) Plaintiff argues that the ALJ erred in relying on the VE's testimony as it addressed the availability of light work jobs, while Plaintiff's RFC was limited to

understanding, remembering, and carrying out simple, one to two step instructions. (Doc. 8 at 9.)

At step five, "the critical inquiry . . . is whether jobs exist in the national economy in significant numbers that the claimant could perform in spite of his impairments, and the ALJ can consider both jobs data drawn from the DOT as well as from the testimony of the VE in making this determination." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1360 (11th Cir. 2018).

The ALJ asked the VE a hypothetical question that included the functional limitations consistent with Plaintiff's RFC. (Tr. at 25, 50–51.) The VE testified that an individual with such limitations would be able to perform the following positions: (1) production assembler, DOT Code 706.678-010, with 273,000 positions in the national economy; (2) hand packager, DOT Code 559.687-074, with 123,000 positions in the national economy; and (3) housekeeping cleaner, DOT Code 323.687-014, with 438,000 positions in the national economy. (Tr. at 25, 51–52; *see* DOT, § 706.687-010, 1991 WL 679074 (G.P.O. 1991); DOT, § 559.687-074, 1991 WL 683797 (G.P.O. 1991); DOT, § 323.687-014, 1991 WL 672783 (G.P.O. 1991).) The positions of production assembler, hand packager, and housekeeping cleaner have a Specific Vocational Preparation ("SVP") rating of 2. (Tr. at 25, 51.)

### 1.  Scrivener's Error

While the ALJ made a finding that Plaintiff was able to perform the occupation of "housekeeping cleaner, . . . [DOT] Code 323.687-010, classified as unskilled work with an SVP rating of 2 . . . ." (tr. at 25; *see* DOT, § 323.687-010, 1991 WL 672782 (G.P.O. 1991)), the transcript of the hearing indicates that the ALJ's finding was a scrivener's error that was harmless (tr. at 51). The VE testified that Plaintiff could perform the position of housekeeping cleaner, DOT Code 323.687-014, which is Reasoning Level 1. (Tr. at 51; *see* DOT, § 323.687-014, 1991 WL 672783 (G.P.O. 1991).) In addition, DOT Code 323.687-010 is the position of hospital cleaner, not housekeeping cleaner, indicating that the ALJ committed a scrivener's error in listing the wrong DOT Code. *See* DOT, § 323.687-010, 1991 WL 672782 (G.P.O. 1991).

Regarding the harmless error doctrine, the Supreme Court in *Shinseki v. Sanders*, 556 U.S. 396, 409 (2005) noted that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Furthermore, "[w]here an ALJ makes a factual error, the error will be considered harmless if it is clear that the error did not affect the ALJ's ultimate determination," and "substantial evidence supports the ALJ's determination." *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016); *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) ("We have also declined to remand for express findings when doing so would

be a 'wasteful corrective exercise' in light of the evidence of record and when

no further findings could be made that would alter the ALJ's decision.") (quoting

*Ware v. Schweiker*, 651 F.2d 408, 412–13 (5th Cir. Unit A 1981)). Here, Plaintiff

failed to show that the ALJ's finding was harmful given the questions asked of

the VE and the VE's testimony. Also, the correct title and the correct number of

jobs in the national economy for DOT Code 323.687-014 were included in the

ALJ's determination. (Tr. at 25.)  Therefore, the ALJ committed harmless error

in listing the incorrect DOT code. *See Anderson v. Kijakazi*, No. 1:20-CV-865-JTA,

2022 WL 3650619, at *4 (M.D. Ala. Aug. 24, 2022) (finding only harmless error

and declining to remand where ALJ referenced wrong DOT job number).

### 2.  DOT Reconciliation

Plaintiff argues he was unable to perform the identified jobs because all

have a General Educational Development ("GED") Reasoning Level 2, which

Plaintiff argues is inconsistent with his RFC limiting him to understanding,

remembering, and carrying out simple, one to two step instructions, which

would include jobs with Reasoning Level 1. (Doc. 8 at 8–9.) Plaintiff argues that

the Eleventh Circuit held in *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353

(11th Cir. 2018) that SSR 00-4p, 65 FR 75759-61 (2000 WL 1898704) (Dec. 4,

2000) places an "affirmative duty" on the ALJ to resolve apparent conflicts

between the DOT and a VE's testimony regarding jobs a claimant can perform

based upon the hypothetical question at the hearing. (Doc. 8 at 8; *Washington*, 906 F.3d at 1362–67.) Commissioner argues that *Washington* is not implicated because there is no apparent conflict between a limitation to simple instructions and Reasoning Level 2. (Doc. 9 at 20.)

GED Reasoning Level 2 is defined as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DOT, App'x C, § III, Reasoning Development Level 2, 1991 WL 688702. GED Reasoning Level 1 is defined as the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, App'x C, § III, Reasoning Development Level 1, 1991 WL 688702.

Plaintiff improperly relies on *Albra v. Acting Comm'r of Soc. Sec.*, 825 F. App'x 704 (11th Cir. 2020) to argue that a conflict exists with a limitation to one- to two-step instructions (Doc. 8 at 9), because the Court did not reach a determination on this issue as it was remanded on other grounds. *Albra*, 825 F. App'x at 709. The Commissioner argues that there is no apparent conflict between simple instructions and DOT positions with Reasoning Level 2 (Doc. 9 at 21), relying on *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320

(11th Cir. 2021). However, in *Buckwalter*, the claimant was limited to "understand, carry-out, and remember simple instructions," 5 F.4th at 1323, whereas here, Plaintiff is specifically limited to "understand, remember, and carry out simple, one to two step instructions" (tr. at 20). In *Buckwalter*, the Court noted that "simple" does not plainly contradict "detailed" in the Reasoning Level 2 definition, but "the difference between levels one and two lies in the *length* of the instructions, with level one being limited to one- or two-step instructions, and level two not being limited in length." *Buckwalter*, 5 F.4th at 1323 (emphasis in original). The Eleventh Circuit further noted that in *Moore v. Astrue*, "the ALJ has not limited the claimant to 'simple one- or two-step instructions' or otherwise indicated that the claimant could only perform at reasoning level one." *Buckwalter*, 5 F.4th at 1323–24 (quoting *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010)). Here, the ALJ limited Plaintiff to one to two step instructions which should have limited the positions to Reasoning Level 1. Thus, the ALJ erred in not resolving the apparent conflict between Plaintiff's RFC limitations and the VE's testimony as to two of the jobs Plaintiff could perform because production assembler and hand packager are both Reasoning Level 2 positions.  DOT Code 706.678-010, 559.687-074.

However, even though the production assembler and hand packager positions should be eliminated due to an apparent conflict, the position of

housekeeping cleaner remains because it is Reasoning Level 1. DOT Code 323.687-014. Housekeeping cleaner accounts for 438,000 of the 834,000 identified jobs. (Tr. at 25, 51.) In *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1318–19 (11th Cir. 2021), the Court remanded for the ALJ to determine whether the claimant could perform a significant number of positions in the national economy when apparent conflicts eliminated 104,000 of the 125,000 jobs, over eighty percent of the jobs the ALJ determined the claimant capable of performing. Here, while 396,000 positions were eliminated due to apparent conflict, 438,000 positions remain for housekeeping cleaner, which is over fifty percent of the total jobs identified by the ALJ. (Tr. at 25, 51.) More than fifty percent of remaining positions is distinguishable from the less than twenty percent of remaining positions in *Viverette*, which resulted in remand. 13 F.4th at 1318–19. *Viverette* also found persuasive *Kimes v. Comm'r of Soc. Sec.*, 817 F. App'x 654, 658–59 (10th Cir. 2020), which is distinguishable here. *Viverette*, 13 F.4th at 1319 n.3. In *Kimes*, the Tenth Circuit indicated that it could not decide in the first instance whether a "relatively low number"—16,000 positions, after eliminating 80,000 positions due to a conflict—constituted a significant number of jobs in the national economy. *Viverette*, 13 F.4th at 1319 n.3 (quoting *Kimes*, 817 F. App'x at 659). In *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020), the Court found that even though there was a conflict

with one position, such conflict was harmless because "the ALJ still concluded that [claimant] could perform two other jobs."  The Court held that the VE's testimony that claimant could perform 78,000 jobs in the national economy for the remaining two positions constituted substantial evidence to support the ALJ's finding on step five, noting that the Court had upheld a similar number of available jobs. *Valdez*, 808 F. App'x at 1010 (citing *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). In *Wooten v. Comm'r of Soc. Sec.*, 787 F. App'x 671, 674–75 (11th Cir. 2019), the Court held that the elimination of two of the three positions at step five because of a potential conflict was harmless because the claimant remained capable of performing the third position identified by the ALJ, and there was a significant number of jobs in the national economy, 235,000, for the remaining position. Thus, the ALJ's failure to reconcile an apparent conflict between the DOT and the VE's testimony regarding the number of jobs Plaintiff could perform in significant numbers is a harmless error because one position remains in significant numbers in the national economy that Plaintiff could perform.[3]

---

[3] While it is odd to say that of three available job positions, two are excluded based on a harmless error, and the remaining job position remains despite a harmless error, that is the legal outcome. 28 U.S.C. § 2111 states, "the [reviewing] court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." Here, Plaintiff and counsel were present when the VE explained the position of housekeeping cleaner with the correct DOT Code and information. Thus, Plaintiff's substantial rights are not affected by allowing that position to remain.

### 3.  Significant Numbers in the National Economy

Plaintiff also argues that the ALJ has not made a showing that the job of housekeeping cleaner, DOT Code 323.687-014, exists in significant numbers in the national economy for Plaintiff to perform. (Doc. 10 at 4–5.) Plaintiff argues that the ALJ did not present evidence that jobs exist in "significant numbers either in the region where [claimant] live[s] or in several other regions of the country." (Doc. 10 at 4–5; 20 C.F.R. § 404.1566.) However, such argument regarding significant numbers in region was raised only in Plaintiff's Reply Brief (Doc. 10), and this issue was not raised in Plaintiff's Brief (Doc. 8) or Commissioner's Brief (Doc. 9). The Eleventh Circuit has "long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). "Additionally, a reviewing court will not consider issues raised for the first time in a reply brief." *Warren v. Saul*, 533 F. Supp. 3d 1091, 1097 n.3 (M.D. Ala. 2021) (citing *Sapuppo*, 739 F.3d at 683). "A party [] abandons an issue by raising it for the first time in [their] reply brief." *Douglas v. Comm'r, Soc. Sec. Admin.*, 832 F. App'x 650, 655 (11th Cir. 2020) (citing *Sapuppo*, 739 F.3d at 683). Here, Plaintiff did not raise the issue whether positions existed in significant numbers in the region where Plaintiff lives or in several other

regions of the country in his initial brief. Such argument was raised for the first time in Plaintiff's reply brief. As a result, Plaintiff has abandoned this argument. The Court therefore will not consider it.

### c. Substantial Evidence and Subjective Complaints

Plaintiff argues that the ALJ erred in evaluating his subjective complaints because the ALJ's finding that Plaintiff's "statements regarding his impairments are 'not entirely consistent' with the evidence is not a sufficient explanation of why his allegations were discounted." (Doc. 8 at 12.)

Plaintiff's subjective complaints alone are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a three-part pain standard when Plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show (1) evidence of an underlying medical condition and (2) either (a) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (b) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b);

SSR 16-3p, 2016 WL 1119029; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). In order to discredit Plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1561).

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom., Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Courts in the Eleventh Circuit "will not disturb a clearly articulated finding supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citing *Foote*, 67 F.3d at 1562). However, a reversal is warranted if the decision contains no indication of the proper application of the credibility standard applied. *See Owens v. Heckler*, 748 F.2d 1511 (11th Cir. 1984). "The question is not . . . whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 Fed. App'x 935, 939 (11th Cir. 2011).

Here, the ALJ noted that the impairments underlying Plaintiff's medical conditions could be reasonably expected to cause his alleged symptoms and functional limitations, satisfying the first part of the pain standard. (Tr. at 20.)

However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. at 20–21.) The ALJ covered a variety of evidence to support her conclusion, including objective medical evidence and Plaintiff's subjective complaints. (Tr. at 21–24.) Substantial evidence supports the ALJ's conclusion in this case. ALJ's are not required to, "'specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered the claimant's medical condition as a whole.'" *Mitchell*, 771 F.3d at 782 (quoting *Dyer*, 395 F.3d at 1211) (alteration in original).

The ALJ began by noting that Plaintiff's current application alleges disability based on neck, shoulder, and back pain; symptoms from depression; neck surgery in February 2020; radiating pain to his right shoulder and left arm; pain averaging a seven on a pain scale of zero to ten; forgetfulness; prolonged sitting caused pain in both hips; spending most of the day lying down; neuropathy caused by diabetes resulting in discomfort in his feet; cold and itchy feet; diarrhea caused by his Metformin; crying spells; and experiencing auditory hallucinations. (Tr. at 21, 36–47.)

The ALJ found that the record supported that Plaintiff underwent an

ACDF in February 2020, that Plaintiff sought emergent care for the surgery only on one occasion in 2020 for fever, headache, and exposure to Covid 19, and that Plaintiff's physical exam was normal. (Tr. at 21, 388–92, 416.) The ALJ next found that Plaintiff sought emergent care treatment for neck pain on February 20, 2021, reporting that he was experiencing head and arm movement that triggered pain. (Tr. at 21, 664) Plaintiff's "back exam revealed no midline tenderness, no CVA tenderness, and a negative straight leg raise test. The examining physician's impression was cervical radiculopathy." (Tr. at 21, 665.) The ALJ noted that "a cervical spine MRI [was] performed on March 15, 2021, which showed bony fusion at C3-4 with anterior cortical plates and screws creating artifact." (Tr. at 21, 416, 661.)

The ALJ noted that Plaintiff "sought follow-up care for back pain at Medical Pain Management ('MPM'). (Tr. at 21.) MPM's treatment note from April 6, 2021, also showed that [Plaintiff] had diabetes with an A1c of 11.5." (Tr. at 21, 416.) Plaintiff "complained of pain in the lower neck and upper back, with left side worse," but "[t]he examining physician reported that [Plaintiff] was not a candidate for further surgery at the time." (Tr. at 21, 416.) The examining physician reported that Plaintiff's "cervical spine exam revealed minimal to mild tenderness over the lower neck and upper back, range of motion is preserved to the right, and range of motion mildly limited to the left with

positive Spurling's to the left. The examining physician's assessment was cervical radiculopathy and cervical DDD." (Tr. at 21, 418–19.)

The ALJ also noted that Plaintiff presented to Anniston Orthopaedics complaining of right-hand pain on April 7, 2021. (Tr. at 21, 566, 571.) The examining physician reported that Plaintiff "was not tender in the neck or back, nor in the right shoulder or elbow." (Tr. at 21, 571.) The examining physician's assessment of Plaintiff was "Dupuytren's contracture right ring finger and healed right distal fourth metacarpal fracture," and "treatment notes showed that [Plaintiff] received an Xiaflex injection." (Tr. at 22, 571, 578.)

The ALJ further noted that Plaintiff presented for a left shoulder recheck on June 9, 2021, for a follow-up visit to Anniston. (Tr. at 22, 582.) Plaintiff "complained of left posterior shoulder pain with radiating numbness down to his hand," and he "denied any complaints of the right finger, indicating the Xiaflex injection was beneficial" and that "his hand function returned to normal." (*Id*.) The examining physician reported that Plaintiff "was nontender and stable in the cervical spine, and he had full range of motion in the left shoulder with negative impingement and negative apprehension sign," and that Plaintiff "had full range of motion in the right hand." (Tr. at 22, 582.) A cervical spine x-ray:

showed previous instrumental fusion at C3-4 with significant DDD

at C5-6, and the left shoulder x-ray showed no acute findings or significant degenerative changes. The examining physician's assessment was DDD at C5-6 with left upper extremity radiculopathy, history of C3-4 cervical fusion cervical spine, left posterior shoulder pain, and status post Xiaflex injection and manipulation.

(Tr. at 22, 582.)

The ALJ noted that Plaintiff's limitations in performing his daily activities were only moderate limitations. (Tr. at 19.) While Plaintiff "reported that he rarely goes out to avoid interacting with others," Plaintiff "reported that he enjoyed church and singing while there," that "he socialized in group settings," and "denied any difficulty getting along with others." (Tr. at 19, 231.) Plaintiff also "stated that he attends church three times a week." (Tr. at 19, 48, 231.) Plaintiff "reported that he needed motivation carrying out his daily activities," and that "he could only maintain attention for 15 minutes." (Tr. at 19, 229, 232.) Plaintiff "reported that he enjoyed reading." (Tr. at 19, 48, 231.) However, the ALJ found that "the record fails to show mention of continued distractibility and an inability to complete testing that assesses concentration and attention." (Tr. at 19, 416–19, 559–84, 663–93.)  Plaintiff also "reported that he helps care for his wife, who is disabled," that "he assists with cooking and washing clothes," that he "cook[s] once or twice a week," that he has "four dogs for which he provides care," that he "walk[s] the dogs up to four times a day," and that "he

could drive and go out alone." (Tr. at 19, 48, 228–31.) In June 2021, Plaintiff "reported performing yard work by riding a lawn mower one or two days a week" (tr. at 19, 445), but Plaintiff "denied performing yardwork" at the hearing and in March 2021. (tr. at 19, 48, 229, 234.) The ALJ found that "the objective evidence in the record showed [Plaintiff] to have appropriate grooming and hygiene, no problem getting along with providers and staff, and primarily a normal mood." (Tr. at 19, 418, 559–84, 664–65, 671–72, 674, 677–78.)

The ALJ found that Plaintiff's treatment records and examinations do not support a finding that Plaintiff's self-reported physical and mental limitations are as disabling as alleged. (Tr. at 23–24.) Although Plaintiff exhibited medically determinable physical and mental impairments, the ALJ properly accounted in the RFC for these moderate limitations caused by his pain limiting him to light work with several additional restrictions listed. (Tr. at 20–24.)

### d.  Vocational Expert Hypothetical Questions

Plaintiff argues that substantial evidence does not support the ALJ's determination because the ALJ improperly relied on the hypothetical questions posed to the VE. (Doc. 8 at 14–15.) For the testimony of a VE "to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of [Plaintiff's] impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *see Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985)

(holding that since the hypothetical question upon which the expert based his testimony failed to assume the existence of psychological problems, which the ALJ found to be severe, the decision was not based on substantial evidence).

Here, the ALJ posed the following questions to the VE:

ALJ: Dr. McClanahan, if you assume a person who is a younger individual with a high school equivalent education and work experience as that of Mr. Bradley, and he could perform work at a light level of exertion, as that term is defined in the regulations, except he can frequently push/pull with bilateral upper extremities, frequently climb ramps and stairs but never climb ladders, ropes, or scaffolds. He can frequently balance, stoop, kneel, crouch, and occasionally crawl. He can frequently reach overhead bilaterally, and frequently finger bilaterally. He should avoid concentrated exposure to extreme cold, heat, wetness, vibration, and any exposure to hazards. He has some additional non-exertional limitations. He can understand, remember, and carry out one-to-two step instructions, and maintain attention for two hour periods. He can tolerate occasional interaction with the general public, co-workers, and supervisors. Changes in the workplace should be introduced gradually, and occur no more than occasionally. Would there be jobs this hypothetical individual could perform?

VE: Yes, Your Honor. And before I provide examples, each of these jobs is just going to be light exertional range, unskilled, SVP 2. The first example that I have is production assembler, DOT code #706.687-010. There's 273,000 jobs in the national economy. As a second example, there is hand packager and inspector, DOT code #559.687-074. There's 123,000 jobs in the national economy. And as a third example, Your Honor, there is electronics worker, DOT code #726.687-010, and there's 143,000 jobs in the national economy. And Your Honor, actually, I need to check on one thing with respect to that job before we make that an example. Okay,

Your Honor, that job, actually, should be eliminated because there are some light --

ALJ: Which one?

VE: -- hazardous. Sorry, the electronics worker. Instead of the electronics worker, I have housekeeping/cleaner, <u>DOT</u> code #323.687-014. There's 438,000 jobs in the national economy, Your Honor.

(Tr. at 50–52.)

Plaintiff argues that the hypothetical questions posed by the ALJ "failed to account for a finding that the claimant has moderate restrictions in concentration, persistence, or pace." (Doc. 8 at 14.) The Court agrees that the questions posed by the ALJ do not discuss Plaintiff's moderate limitations in regard to concentration, persistence, or pace, but as the Commission asserts, "an ALJ's hypothetical restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite concentration deficiencies." *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 872 (11th Cir. 2011) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011)). The ALJ found that Plaintiff "has moderate limitations in regard to concentration, persistence, or maintaining pace." (Tr. at 19.) The ALJ's findings and hypothetical questions included that Plaintiff "can understand, remember, and carry out one-to-two

step instructions, and maintain attention for two-hour periods. He can tolerate occasional interaction with the general public, co-workers, and supervisors. Changes in the workplace should be introduced gradually, and occur no more than occasionally." (Tr. at 20, 51.)

Plaintiff relies on *Winschel* to support the argument that the ALJ failed to account for all limitations in the hypothetical questions. (Doc. 8 at 14–15; Doc. 10 at 6.) However, in *Winschel*, the Eleventh Circuit remanded the case because "the ALJ asked the vocational expert a hypothetical question that failed to include or otherwise implicitly account for all of Winschel's impairments." *Winschel*, 631 F.3d at 1181. *Winschel* notes "that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations." *Winschel*, 631 F.3d at 1180 (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 288 (6th Cir. 2009); *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002)); *see also Jarrett*, 422 F. App'x at 871–72. As seen in *Jarrett*, "the ALJ asked the VE to assume an individual . . . who could only 'understand, remember, [and] carry-out simple . . . tasks and concentrate for brief periods of time," and such the "hypothetical question adequately accounted for the ALJ's finding that Jarrett had moderate difficulties in concentration, persistence, and pace." *Jarrett*, 422 F. App'x at 871 (alterations in original).

Because the ALJ included in the hypothetical question Plaintiff's ability to "understand, remember, and carry out one-to-two step instructions, and maintain attention for two-hour periods," the ALJ explicitly and implicitly accounted for Plaintiff's moderate limitations in concentration, persistence, and pace. (Tr. at 19.) Thus, the ALJ did not err in the hypothetical questions posed to the VE.

## V.   Conclusion

Upon review of the administrative record, and considering Plaintiff's argument, this Court finds the Commissioner's decision is supported by substantial evidence and in accordance with the applicable law. For the foregoing reasons, this Court hereby AFFIRMS the Commissioner's decision. A separate Order consistent with this Opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on February 16, 2024.

L. Scott Coogler
United States District Judge

215708